IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

MICHAEL A. MCKAY,

                               Plaintiff,                         OPINION AND ORDER

     v.                                               23-cv-504-wmc

WISCONSIN DEPARTMENT OF REVENUE,
PETER BARCA, HOLLY KITTLE, JENNIFER
DAMBACH, and VICTORIA SIMONSON,

                               Defendants.

---

     Plaintiff Michael McKay, who suffers from chronic obstructive pulmonary disease ("COPD") and other unidentified disabilities, alleges that he worked as a revenue agent for defendant Wisconsin Department of Revenue ("DOR") until forced to quit by DOR's implementation of a return-to-work policy during the COVID-19 pandemic, which made his working conditions intolerable. Specifically, McKay contends that DOR and several of its top officials harassed him, retaliated against him, and refused to accommodate his reasonable requests in light of his disability and religious beliefs in lieu of complying with a masking requirement, all in violation of the Americans with Disabilities Act ("ADA") and Title VII of the Civil Rights Act of 1964. Defendants have moved to dismiss McKay's claims on several grounds, including that: (1) the individual defendants named by plaintiff cannot be sued under either the ADA or Title VII; (2) any claims for monetary damages under the ADA are barred by sovereign immunity; and (3) McKay's allegations are insufficient to state a prima facie case of religious discrimination under Title VII or disability discrimination under the ADA. (Dkt. #11.)

     Plaintiff McKay opposes dismissal on the pleadings of any of his claims or named defendants. He has also moved for leave to file a second amended complaint to add more

factual allegations in support of his Title VII claim *and* assert a new, freedom-of-religion claim under the First Amendment.  (Dkt. #14.)  Defendants oppose plaintiff's motion to amend as futile because:  the second amended complaint does not correct the pleading deficiencies in his first amended complaint; and it fails to allege personal involvement by any of the individual defendants, which is necessary to hold them liable for a constitutional violation under 42 U.S.C. § 1983.

Defendants' motion to dismiss will be granted in part and denied in part.  For the reasons below, the court concludes that McKay's allegations are sufficient to state Title VII and ADA claims of harassment, hostile work environment, constructive discharge, and retaliation against DOR as his employer, but fail to state any viable claim against the individual defendants, who will be dismissed, except for defendant Peter Barca, who will remain a defendant only for purposes of entering possible injunctive relief.  Because the court further concludes that McKay's proposed, second amended complaint does not correct these deficiencies and fails to state a viable free exercise claim under the First Amendment, McKay's motion for leave to amend will be denied.  However, the court will allow McKay one final opportunity to amend his complaint to correct fixable deficiencies as specifically identified in this opinion.

## ALLEGED FACTS[1]

### A.  Background and Parties

Plaintiff Michael McKay is a veteran of the United States Marine Corps with 100%

---

[1] In resolving a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court takes all factual allegations in the complaint, as well as all matters of public record, not only as true but viewed in a light most favorable to plaintiff, drawing all inferences in plaintiff's favor.  *Killingsworth*

service-connected disabilities and COPD.   He holds the religious beliefs of a non-denominational Christian, which he and his family practice strictly.   McKay was hired as a revenue agent at DOR in June 2016 and promoted to "Revenue Agent 2" in 2020.   His disabilities were considered as part of the hiring decision.   The individual defendants all work for DOR in some capacity:   Peter Barca is the Secretary; Holly Kittle is a Revenue Agent Supervisor and was McKay's direct supervisor; Jennifer Dambach is the Deputy Administrator of Income, Sales, and Excise Tax and was McKay's indirect supervisor; and Victoria Simonson is employed by the Department of Administration ("DOA") as a Human Resource Specialist for DOR.

### B.  Accommodation Requests

In late August 2021, DOR was engaged in efforts to bring its employees back to the office during the COVID pandemic and adopted requirements for masking.[2]  Because McKay's religious beliefs allegedly conflicted with masking, McKay requested that he be allowed to continue to work from home as an accommodation based on disability and religious grounds.[3] Further, McKay alleges that his cubicle neighbor of five years, who also had pre-existing medical issues, was allowed to continue to work from home even after most state employees had

---

*v. HSBC Bank Nev.*, 507 F.3d 614, 618 (7th Cir. 2007).   The following facts are drawn from McKay's first amended complaint (dkt. #8) except as otherwise noted.

[2] Plaintiff added the allegation about DOR having an express masking *requirement* in his proposed second amended complaint.   (*See* dkt. #14-1, at ¶ 15.)   Defendants also allude to McKay's refusal to comply with a vaccine requirement in their briefs, but McKay does not include any such allegation in either of his complaints, so the court has not considered the latter requirement.

[3] McKay does not allege whether any disability also conflicted with the masking requirement, nor does he allege what *specific* religious belief or medical issue prevented him from wearing a mask or returning to work in the office.

returned to the office.   Nevertheless, instead of seriously evaluating McKay's request, Simonson instead allegedly sent him a list of questions to answer about his religious beliefs, including:  "how long have you followed this religion?" and "does [your religion] prohibit only wearing some masks?"[4]

### 1.   September 1, 2021 Meeting

While McKay's accommodation requests were still pending, Dambach ordered McKay to attend a meeting on September 1, 2021.  McKay assumed the meeting would relate to his accommodation requests and asked Dambach to communicate with him by email, but Dambach insisted on an immediate, in-person meeting.   McKay asked for and received permission from Dambach to record the meeting.   During the meeting, Dambach allegedly harassed and verbally abused McKay by telling him that he was unfit for work and threatened to call the police to have McKay removed.   Kittle was allegedly present in her capacity as Revenue Agent Supervisor and witnessed these events, but she did nothing to stop Dambach's harassment.

### 2.   McKay's Complaint Against Dambach and DOR's Response

McKay filed a formal complaint against Dambach with the Equity and Inclusion Program Manager, Angela Zilliox, on September 10, 2021, and received notice from Kittle later that day, stating that an investigatory meeting would be held on September 14, to investigate whether McKay had engaged in the unauthorized audio and video recording of the September

---

[4] While the first amended complaint (dkt. #8, at ¶ 16) alleges only that Simonson asked about plaintiff's religious objection to wearing of masks, the proposed second amended complaint includes additional questions that she allegedly asked.  (Dkt. #14-1, at ¶ 16.)

1 meeting.   After learning that McKay was represented by counsel, Kittle delayed the investigatory meeting by one day, and contrary to standard practice for DOR, sent an email to McKay demanding a doctor's note for each of the seven sick days he took during 2021.  Kittle also allegedly threatened to ask Human Resources to review these requests if he did not produce a doctor's note by September 16, 2021.

The allegation that McKay had recorded the September 1, 2021 meeting without permission was dropped by September 17, 2021.  On October 27, 2021, Zilliox told McKay that she had reviewed the information and video of the September 1 meeting that he had with Dambach and Kittle, and she found no issues.  Accordingly, Zilliox advised him that she was closing his formal complaint.

### 3.  Accommodation Decision

On September 8, 2021, McKay also received an official denial of his request for an accommodation based on his non-denominational, Christian beliefs, but not a denial of his medical accommodation request.   Apparently in response to McKay providing Human Resources with a medical recommendation from his doctor, Simonson sent a follow-up questionnaire to McKay's doctor asking for more specific details about his condition.

On September 9, 2021, McKay further received notice that he would be expected to return to the office, working five days in a small conference room away from the rest of the staff and then five days at home.  However, defendant Barca allegedly informed McKay on October 26, 2021, that there would be no further accommodations.

McKay not only found the accommodation of working in a segregated conference room to be unreasonable, but an intentional act of harassment and retaliation.  Despite the existence

of multiple conference rooms at DOR and large vacant areas on at least one floor, McKay was forced to work in different rooms at different times, and on some days, he had to switch rooms more than once without the equipment he needed.  As a result, McKay had to re-learn how to do his work on different and often subpar equipment or configurations of equipment, and he constantly had to ask the help desk to resolve hardware and connection issues, all of which prevented McKay from maintaining his usual level of proficiency.  While defendant Kittle was allegedly responsible for reserving the rooms in which McKay worked during this period, she did not ensure that he had the space and tools needed for his work.

### C.    Additional DOR Actions and McKay's Resignation

On November 27, 2021, Kittle, Dambach, and Wendy Miller met with McKay to present him with a letter signed by Diane Hardt, the former Administrator of the Income, Sales, and Excise Taxes Division at DOR, stating that:  McKay was unfit for duty due to his failure to comply with the COVID testing policy; and he would be placed on unpaid administrative leave until he could prove his compliance.  However, Kittle allegedly knew that McKay was in full compliance with the policy, having discussed the issue with him three days before that meeting.  Further, McKay allegedly received a second letter from Hardt on November 28, stating that he was *not* being placed on administrative leave.

In December 2021, McKay emailed Kittle asking if he could take 15 days of vacation in January 2022.  After Kittle responded that it was fine, as long as he had the vacation days available, McKay took vacation time in January.  However, on February 5, 2022, McKay was informed that he did not meet the requirements necessary to take the vacation time that had previously been approved.

On January 31, 2022, McKay informed Kittle that he would be resigning after providing a two-week notice, making February 11 his last day of work.  However, Kittle told him a few days later that DOR was treating his last day of work effective January 7, and that he would only be paid through January 18, because his January vacation did not meet DOR's requirements.  Nevertheless, on February 6, DOR sent him a document stating that it would accept February 11, 2022, as his last workday and pay him accordingly *provided* he signed a document absolving DOR of any discriminatory behavior.

Mckay refused to sign that document.  Instead, he filed a complaint with the Equal Employment Opportunities Commission, which issued him a right-to-sue letter on April 25, 2023.  Unable to find another job with the State of Wisconsin, McKay is now working construction.

## OPINION

The question on a motion to dismiss is whether McKay provided defendants with fair notice of his claims and alleged sufficient facts to plausibly suggest that he is entitled to relief. *McCray v. Wilkie*, 966 F.3d 616, 620 (7th Cir. 2020).   McKay purports to assert six different claims that fall into two main categories:[5]  (1) discrimination -- including the failure to offer a reasonable accommodation, hostile work environment, and constructive discharge -- based on his religious beliefs in violation of Title VII, and based on his disabilities in violation of the

---

[5] The first amended complaint identifies six separate causes of action.  Although the claims obviously overlap, each identifies differing theories of discrimination.  McKay also does not specify the statutes under which he is bringing his retaliation claim but he alleges that "defendant," which the court understands to refer to the DOR, took "adverse employment actions" against him because he made "requests for accommodations" and filed a complaint against Dambach.  (Dkt. 8, at ¶¶ 98-100.)  McKay does not assert a First Amendment retaliation claim against any of the individual defendants.

ADA; and (2) retaliation for requesting accommodations and for filing an internal DOR complaint in violation of Title VII and the ADA.  Defendants move to dismiss all of these claims, arguing that McKay's vague, sparse allegations fail to state any claim upon which relief may be granted under Fed. R. Civ. P. 12(b)(6).  In seeking leave to file his second amended complaint, McKay would also add a few factual allegations about his religious beliefs and DOR's masking requirement, as well as a First Amendment claim because defendants also infringed his right to free exercise of religion by denying his request for accommodation, then retaliated against him for asserting this First Amendment right.  The court will start by discussing the parties' arguments with respect to the Title VII and the ADA claims, before turning to McKay's newly-proposed, free exercise claim.

## I.  Title VII and ADA Claims

### A.  Proper Defendants

As an initial matter, defendants argue and McKay does not dispute that:  (1) defendants Barca, Kittle, Dambach, and Simonson cannot be sued in their individual capacities because they are not considered employers under either Title VII or the ADA, *Williams v. Banning*, 72 F.3d 552, 553-54 (7th Cir. 1995); (2) sovereign immunity bars any claim for money damages under Title I of the ADA against defendant DOR and the individual defendants in their official capacities, *Bd. of Trustees of Univ. of Alabama v. Garrett*, 531 U.S. 356, 360 (2001);[6] and (3)

---

[6] Title I of the ADA is the section that applies to claims of employment discrimination, like the one McKay asserts here.  *Dykman v. Bd. of Regents of Univ. of Wisconsin Sys.*, No. 23-cv-217-JDP, 2023 WL 9106242, at *3 (W.D. Wis. Nov. 28, 2023).  While some plaintiffs seek to avoid the sovereign immunity bar by asserting a claim under the roughly parallel provisions of the Rehabilitation Act, 29 U.S.C. § 701 et seq., McKay has not pled this alternative claim, nor does he allege or argue in his response brief that DOR receives federal financial assistance, which is a required element for Rehabilitation Act claims.  *Jaros v. Illinois Dep't of Corr.*, 684 F.3d 667, 671-72 (7th Cir. 2012).

defendant Barca is the appropriate defendant for McKay's claim for reinstatement under the ADA.  Accordingly, McKay cannot state a claim against any of the individual defendants except Barca, and defendants Kittle, Dambach, and Simonson will be dismissed from this lawsuit.

### B.  Reasonable Accommodation

#### 1.  Religious Grounds

"An employee claiming that [his] employer failed to accommodate [his] religion must as a threshold matter show that (1) the observance, practice, or belief conflicting with an employment requirement is religious in nature; (2) the employee called the religious observance, practice, or belief to the employer's attention; and (3) the religious observance, practice, or belief was the basis for the employee's discriminatory treatment." *Passarella v. Aspirus, Inc.*, No. 23-1660, 2024 WL 3561180, at *2 (7th Cir. July 29, 2024) (citing *Adeyeye v. Heartland Sweeteners, LLC*, 721 F.3d 444, 449 (7th Cir. 2013)).  In *Passarella*, the Seventh Circuit also held that "an employee seeking an accommodation . . . must allege facts plausibly permitting an inference that some 'aspect' of the request is based on the employee's 'religious observance and practice' or 'belief.'"  *Id*. at *3 (quoting 42 U.S.C. § 2000e(j) and explaining that an "objection to a workplace requirement may incorporate both religious and secular reasons").  The court of appeals instructed that "the statutory language necessarily requires an exercise of judgment" and "is not amenable to formulaic resolution like solving a math equation," cautioning courts not to "dissect religious beliefs" at the pleading stage to determine their validity or reasonableness.  *Id*. at *3-4.

McKay currently alleges that he and his family are non-denominational Christians, but he fails to identify any particular religious belief that conflicted with a DOR requirement for returning to the workplace.  In his proposed second amended complaint, McKay seeks to add

allegations that he (1) opposed DOR's masking mandate and "other" return-to-work requirements on religious grounds, and (2) asked to be allowed to work from home in lieu of complying with those requirements. (Dkt. #14-1, at ¶¶ 2 and 15.) Although these new allegations are slightly more specific, they still do not support a reasonable inference that McKay based his accommodation request at least in part on an aspect of his religious belief or practice. Instead, McKay alleges only that he told DOR officials that he needed to work from home because the masking requirement conflicted with his religion without pointing to a particular religious belief or practice to the DOR's attention in requesting an exemption. *See Passarella*, 2024 WL 3561180, at *4-5 (finding plaintiffs' vaccine exemption requests satisfied pleading standard because plaintiffs *expressly* alleged that their objection to vaccination conflicted with Christian beliefs regarding the sanctity of the human body).

Moreover, plaintiff only alleges that Simonson asked him pointed questions about his particular religious beliefs, and how they conflicted with masking, but does *not* allege whether plaintiff provided this information to DOR in requesting an accommodation. McKay argues that the "tenor" of the questions Simonson asked him about his religion suggested that the DOR was not considering his request for religious accommodation in good faith, a far more reasonable inference is that Simonson posed her questions in an effort to determine what practice or belief of McKay's conflicted with masking in an effort to understand his religious objection. Regardless, without more, the court cannot plausibly infer even now that some aspect of McKay's accommodation request was based on his religious observance, practice, or belief, and more importantly, that McKay informed DOR of that observance, practice, or belief.

10

### 2.  Disability Grounds

Plaintiff's claim that the DOR failed to reasonably accommodate his disability suffers from a similar deficiency.  To state a failure-to-accommodate claim under the ADA, plaintiff must allege facts to permit an inference that (1) he was a qualified individual with a disability; and (2) the DOR was aware of this disability but refused to reasonably accommodate it.  *Scheidler v. Indiana*, 914 F.3d 535, 541 (7th Cir. 2019); 42 U.S.C. § 12112(b)(5)(A).  While McKay alleges that he had disabilities of which DOR was aware, he again fails to identify any (with the exception of COPD), fails to describe what disability or impairment prevented him from complying with masking (or any other requirements for returning to the workplace), fails to allege that he made his limitation clear to the DOR, and fails to allege why the offered accommodation did not meet his needs with respect to any of disability.

In light of the deficiencies in both plaintiff's Title VII and ADA claims, the court will grant defendants' motion to dismiss his claims of unlawful discrimination based on a failure to accommodate either his religious beliefs or disability, but will do so without prejudice to allow McKay one, *final* opportunity to file an amended complaint curing those deficiencies.  *See Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 519-20 (7th Cir. 2015) (generally plaintiff should be given opportunity to amend complaint after dismissal to fix defects identified by the court).

### C.  Harassment, Hostile Work Environment, and Constructive Discharge

To state viable, related claims of harassment and hostile work environment under Title VII or the ADA, plaintiff must plausibly allege that:  (1) he was subject to unwelcome harassment; (2) the harassment was based on his religion or disability; (3) the harassment was severe or pervasive so as to alter the conditions of his employment and create a "hostile or

abusive" working environment; and (4) there is a basis for employer liability. *See Demkovich v. St. Andrew the Apostle Par., Calumet City*, 3 F.4th 968, 977 (7th Cir. 2021) (setting forth essential elements of hostile work environment claim under both Title VII and ADA); *Huri v. Off. of the Chief Judge of the Cir. Ct. of Cook Cnty.*, 804 F.3d 826, 833-34 (7th Cir. 2015) (citing *Cooper-Schut v. Visteon Auto. Sys.*, 361 F.3d 421, 426 (7th Cir. 2004) for specific elements). Moreover, "[t]o rise to the level of a hostile work environment, conduct must be sufficiently severe or persuasive to alter the conditions of employment such that it creates an *abusive* relationship." *Huri*, 804 F.3d at 834 (citing *Alexander v. Casino Queen, Inc.*, 739 F.3d 972, 982 (7th Cir. 2014)) (emphasis in original).

The Seventh Circuit has explained that a plaintiff bears a "heavier burden" to prove these types of discrimination claims (as opposed to retaliation claims), because an adverse employment action must involve "a significant change in employment status, and often involves the employee's current wealth, [] career prospects, working conditions, etc." *Huri*, 804 F.3d at 833. Further, constructive discharge claims entail something "even more egregious than the high standard for hostile work environment claims." *Hunt v. Wal-Mart Stores, Inc.*, 931 F.3d 624, 628 (7th Cir. 2019) (internal quotation omitted). "A plaintiff who advances such a compound claim must show working conditions so intolerable that a reasonable person would have felt compelled to resign." *Pennsylvania State Police v. Suders*, 542 U.S. 129, 147 (2004).

So far, plaintiff alleges that DOR treated him in the following adverse ways:

- Simonson asked McKay "invasive" questions about his religious practices.

- Dambach demanded that McKay attend an in person meeting with her and Kittle on September 1, 2021, during which Dambach told McKay that he was unfit for work and threatened to call the police to have McKay removed, although no discipline or other corrective action was taken.

12

- Simonson sent a questionnaire to McKay's doctor asking for more specific details about his medical condition.

- On September 10, 2021, the same day that McKay filed an internal complaint against Dambach, Kittle told McKay that he would be investigated for recording the September 1 meeting, even though he had been authorized to do so, although that investigation was dropped by September 17, 2021.

- After learning that McKay was represented by counsel, Kittle demanded that McKay produce a doctor's note for the seven sick days he took during 2021, and threatened to ask Human Resources to review his use of sick leave if he did not produce a note by September 16, 2021, even though it is not standard DOR practice to ask for such notes.

- On September 9, 2021, McKay was told that the only accommodation he would receive for his disability was to work from home for five days and work in isolation in the office for five days.  Kittle then scheduled McKay to work in different rooms at different times without the equipment he needed, sometimes requiring McKay to switch rooms more than once in one day.

- On November 27, 2021, McKay was notified that he would be placed on unpaid administrative leave until he complied with the COVID testing policy, even though Kittle knew that McKay was in full compliance, although he was told the very next day that he would not be placed on administrative leave.

- After McKay submitted his resignation letter on January 31, 2022, his termination date was changed and he was denied pay that he was owed on the grounds that he had not met the requirements for using 15 days of vacation time in January 2022, even though Kittle had approved the leave and this amount was ultimately paid.

As defendants argue, much of the above conduct cannot even be considered adverse nor materially so.  As discussed above, without more, Simonson's limited requests for more information about McKay's religious practices and disabilities would be proper as part of the accommodation process, *see E.E.O.C. v. Sears, Roebuck & Co*., 417 F.3d 789, 805 (7th Cir. 2005) ("After an employee's initial disclosure, the ADA obligates the employer to engage with the employee in an 'interactive process' to determine the appropriate accommodation under the circumstances.") (internal citation omitted), and even as described by McKay, do *not* rise to

13

the egregious level of harassment required to support a claim of constructive discharge, *see Hunt*, 931 F.3d at 628.  McKay also describes two instances in which he was falsely accused of failing to adhere to workplace policies regarding the recording of meetings and Covid testing, but both accusations seemed to involve mistaken assumptions that were quickly dropped without McKay being penalized.  Similarly, courts have consistently found in the discrimination context that the denial of preferred time off or vacation time is not considered a material adverse employment action at all.  *See Woods v. City of Markham*, No. 20-cv-1668, 2024 WL 3673678, at *8 (N.D. Ill. Aug. 6, 2024) (occasional denial of time off involving no reduction in pay constitutes no more than minor change in working conditions); *Saggu v. Dejoy*, 2021 WL1165106, at *11 (N.D. Ill. March 26, 2021) ("denials of leave requests are generally not materially adverse employment action."); *Mahran v. Advocate Health and Hospitals Corp.*, 2019 WL 952131, at *10 (N.D. Ill. Feb. 26, 2019) (The "refusal to honor an employee's preferred vacation schedule amounts to merely an inconvenience and does not materially alter the terms and conditions of the employee's job."), *aff'd sub nom*, 12 F.4th 708 (7th Cir. 2021).  In any event, McKay was not actually denied sick leave in 2021, and the denial of vacation time off resulting in the change in his termination date did not occur until *after* McKay had already resigned.

Notwithstanding these concerns, plaintiff *does* allege that he was harassed by coworkers in a meeting about his accommodation requests on September 1, 2021, and that his supervisor made his working conditions intolerable on the days that he was scheduled to work in person. In particular, over the course of a few months, McKay's supervisor repeatedly required McKay to work in different rooms without the equipment he needed.  Although such actions may not have been so severe to create a hostile work environment or forced a reasonable person to

14

resign, the extent and materiality of those adverse actions require further development of the factual record.  *See Huri*, 804 F.3d at 834 ("[I]t is premature at the pleadings stage to conclude just how abusive [plaintiff's] work environment was.").  Accordingly, defendants' motion to dismiss plaintiff's Title VII and ADA claims as to harassment, hostile work environment, and constructive discharge will be denied.

### D.  Retaliation

Finally, Title VII and the ADA both prohibit employers from retaliating against individuals who have engaged in protected activities, such as requesting reasonable accommodations or filing internal complaints.  *See Scaife v. United States Dep't of Veterans Affs.*, 49 F.4th 1109, 1118 (7th Cir. 2022) (Title VII); *Rowlands v. United Parcel Serv.-Fort Wayne*, 901 F.3d 792, 801 (7th Cir. 2018) (ADA); *Dickerson v. Bd. of Trustees of Cmty. Coll. Dist. No. 522*, 657 F.3d 595, 601 (7th Cir. 2011) (42 U.S.C. § 12203(a) bars employers from retaliating against employees who assert discrimination under the ADA).  To state a retaliation claim, therefore, plaintiff must plausibly allege that he engaged in a statutorily protected activity and was subjected to adverse employment action as a result of that activity.  *Huri*, 804 F.3d at 833. The Seventh Circuit has explained that "[i]n the retaliation context, 'adverse employment action' simply means an employer's action that would dissuade a reasonable worker from participating in protected activity."  *Id*. (citing *Chaib v. Indiana*, 744 F.3d 974, 986-87 (7th Cir. 2014)).

However, defendants have yet to point out any specific deficiency in plaintiff's retaliation claims.  Indeed, plaintiff alleges that defendants treated him adversely because he engaged in such protected activities as requesting accommodations and complaining about

15

Dambach's harassment during the September 1, 2021 meeting.  Although plaintiff does not make clear which of defendants' actions he believes were retaliatory, the court can infer from his allegations that he is referring to the same alleged conduct described in conjunction with his discrimination claims.  Although defendants may argue, as they do with respect to plaintiff's discrimination claims, that their alleged actions were not so materially adverse as to rise to the level of retaliation, those allegations are sufficient at the pleading stage to state a retaliation claim under Title VII and the ADA, especially given the lower burden for retaliation claims. Accordingly, defendants' motion to dismiss will be denied with respect to those claims as well.

## II. Free Exercise of Religion

As noted, plaintiff also now seeks to amend his complaint to add a First Amendment free exercise claim based on defendants' denial of his request for a religious accommodation, essentially repeating his claim under Title VII.  Generally, a plaintiff may state this type of constitutional claim under 42 U.S.C. § 1983 by alleging that defendants "personally and unjustifiably placed a substantial burden on his religious practices."  *See Thompson v. Holm*, 809 F.3d 376, 379 (7th Cir. 2016) ("A substantial burden puts substantial pressure on an adherent to modify his behavior and to violate his beliefs."); *but see Lockett v. Brown,* No. 20-CV-339-JDP, 2020 WL 6566150, at *3 (W.D. Wis. Oct. 20, 2020) (discussing variations in the precise elements of a free exercise claim).

As discussed above in conjunction with McKay's religious accommodation claim, however, plaintiff has not sufficiently alleged what type of burden, if any at all, defendants' return-to-work requirement placed on his religious practices.  More importantly, as defendants argue, individual liability under § 1983 requires a plaintiff to identify the person or persons

16

involved in the alleged constitutional deprivation, *Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017), and plaintiff does not allege which defendant, if any, denied his request for a religious accommodation.  Accordingly, plaintiff's motion for leave to file a second amended complaint will be denied as futile in its present form, although this denial is also without prejudice so plaintiff may have one final opportunity to file an amended complaint that fixes the defects identified by the court.  *Runnion*, 786 F.3d at 519-20.

## ORDER

IT IS ORDERED that:

1) Plaintiff Michael McKay's latest motion for leave to amend (dkt. #14) is DENIED and the first amended complaint remains the operative pleading in this case.

2) Defendants' motion to dismiss the first amended complaint (dkt. #11) is GRANTED IN PART and DENIED IN PART:

    a. Plaintiff's Title VII and ADA claims against individual defendants Holly Kittle, Jennifer Dambach, and Victoria Simonson are DISMISSED.  Defendant Peter Barca will remain a defendant only for the purposes of considering injunctive relief.

    b. Plaintiff's Title VII and ADA claims that defendants failed to provide a reasonable accommodation are DISMISSED.

    c. Defendants' motion is DENIED in all other respects.

3) Plaintiff shall have until February 12, 2025, to file an amended complaint, if he chooses to do so, addressing the deficiencies identified in this order with respect to the dismissed claims or a new claim under the free exercise clause.

4) The court will set a new schedule in this case once any and all challenges to the pleadings have been finally resolved.

Entered this 21st day of January, 2025.

BY THE COURT:
/s/
WILLIAM M. CONLEY
District Judge

17